FILED
2009 Jun-30  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
.............................................X
                                             :
CONFEDERATE MOTORS, INC.,                    :
                                             :    Civil Action No. 2:09-civ-00949-JEO
              Plaintiff,                      :
                                             :
       - against -                           :
                                             :
WES SILER, GRANT RAY,                        :
JALOPNIK.COM, and GAWKER                     :
MEDIA LLC,                                   :
                                             :
              Defendants.                     :
.............................................X
```

## MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW BY DEFENDANTS GAWKER MEDIA, JALOPNIK.COM AND WES SILER

Forrest S. Latta
Richard J. Davis
BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203

James Rosenfeld (*admitted pro hac vice*)
Deborah Adler (*admitted pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1633 Broadway
27th Floor
New York, New York 10019

***Counsel for Defendants Gawker Media, Jalopnik.com and Wes Siler***

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ................................................................................. 1

STATEMENT OF FACTS ................................................................... 2

    *The Parties* .................................................................................... 2

    *The Publication* ............................................................................. 3

    *The Claims and Requests for Relief* .............................................. 5

ARGUMENT ...................................................................................... 6

  I.    THE COURT MAY DISMISS PLAINTIFF'S CLAIMS AS A
      MATTER OF LAW ................................................................. 6

      A.    Rule 12(b)(6) Standard After *Twombly* ...................... 6

      B.    Judicial Notice of Public Records ............................ 8

  II.   PLAINTIFF'S LIBEL CLAIM FAIL AS A MATTER OF LAW ...... 8

      A.    The Publication Is Not Libelous Per Se ................... 10

      B.    The Publication Contains  Constitutionally
           Protected Opinion ...................................................... 10

           1.    *Reviews and Commentary* ............................. 11

           2.    *Hyperbole* ...................................................... 15

      C.    The Post's Statement Regarding Prior Court
           Actions Is Substantially True .................................... 17

      D.    Plaintiff Fails to Plead the Required Element of
           Special Damages ........................................................ 20

  III.  PLAINTIFF'S TORT CLAIMS FAIL AS A MATTER OF
      LAW ........................................................................................ 21

CONCLUSION .................................................................................. 23

## Table of Authorities

**Page(s)**

**Cases**

*Agora, Inc. v. Axxess, Inc.,*
  90 F. Supp.2d 697 (D. Md. 2000), *aff'd*, 11 Fed. Appx. 99 (4th Cir. 2001) ...... 13

*Ala. Ride Co. v. Vance,*
  178 So. 438 (1938) ........................................................................................ 17

*Anderton v. Gentry,*
  577 So. 2d 1261 (Ala. 1991) .......................................................................... 10

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ..................................................................................... 7

*Aviation Charter, Inc. v. Aviation Research Group/U.S.,*
  416 F.3d 864 (8th Cir. 2005) ............................................................... 11, 12, 14

*Baker v. Los Angeles Herald Exam'r,*
  721 P.2d 87 (Cal. 1986) ................................................................................. 13

*Barta v. Confederate Motorcycles,*
  No. 459674M (19th Jud. Dist. Ct., Parish of E. Baton Rouge 1999) .................. 4

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................... 6, 7, 23, 24

*Bernheim v. Litt,*
  79 F.3d 318 (2d Cir. 1996) ............................................................................... 6

*Bose Corp. v. Consumers Union of United States, Inc.,*
  466 U.S. 485 (1984) ......................................................................................... 9

*Bryant v. Avado Brands, Inc.,*
  187 F.3d 1271 (11th Cir. 1999) ........................................................................ 8

*Butler v. Town of Argo,*
  871 So. 2d 1 (Ala. 2003) ........................................................................... 14, 20

*Casey v. McConnell,*
  975 So. 2d 384 (Ala. Civ. App. 2007) ............................................................ 20

DWT 13053622v1 0080721-000006

*Cochran v. NYP Holdings, Inc.*,
   58 F. Supp.2d 1113 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) 14, 15

*Colon v. City of Rochester*,
   307 A.D.2d 742 (4th Dep't 2003) ...................................................................... 21

*Confederate Motor Co. v. Barlow*,
   No. 06117108 (Sup. Ct., N.Y. Cty 2006) ............................................................ 4

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................................. 6

*Deutsch v. Birmingham Post Co.*,
   603 So. 2d 910 (Ala. 1992) .............................................................................. 15

*Dunn v. Air Line Pilots Ass'n*,
   193 F.3d 1185 (11th Cir. 1999) ........................................................................ 18

*Elite Funding Corp. v. Mid-Hudson Better Bus. Bureau*,
   165 Misc.2d 497 (N.Y. Sup. 1995) ................................................................... 12

*Finebaum v. Coulter*,
   854 So. 2d 1120 (Ala. 2003) ............................................................. 7, 9, 10, 16

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) .......................................................................... 15

*Geraci v. Eckankar*,
   526 N.W.2d 391 (Minn. Ct. App. 1995) ........................................................... 17

*Gertz v. Robert Welch*,
   418 U.S. 323 (1974) ........................................................................................... 9

*Gilbrook v. City of Westminster*,
   177 F.3d 839 (9th Cir. 1999) ...................................................................... 16, 17

*Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*,
   398 U.S. 6 (1970) ............................................................................................... 9

*Hammer v. Amazon.com*,
   392 F. Supp.2d 423 (E.D.N.Y. 2005) ............................................................... 13

DWT 13053622v1 0080721-000006

*Hammer v. City of Osage Beach, Mo.*,
  318 F.3d 832 (8th Cir. 2003) .............................................................................. 11

*Hustler Magazine v. Falwell*,
  485 U.S. 46 (1988) ....................................................................... 8, 9, 10, 16, 21

*Jackson v. BellSouth Telecomm.*,
  372 F.3d 1250 (11th Cir. 2004) ........................................................................... 6

*Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.*,
  175 F.3d 848 (10th Cir. 1999) ..................................................................... 12, 21

*Kirkpatrick v. Journal Publ'g Co.*,
  97 So. 58 (1923) ................................................................................................ 18

*Labor Review Pub. Co. v. Galliher*,
  45 So. 188 (Ala. 1907) ...................................................................................... 14

*Lifton v. Board of Educ. of City of Chicago*,
  416 F.3d 571 (7th Cir. 2005) ............................................................................. 11

*Mashburn v. Collin*,
  355 So. 2d 879 (La. 1977) .................................................................................. 13

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991) ........................................................................................... 18

*Metevier v. Confederate Motorcycles, Inc.*,
  No. 438826 CJB (19th Jud. Dist. Ct., Parish of E. Baton Rouge 1997) ............... 4

*Michelin Tire Corp. v. Goff*,
  864 So. 2d 1068 (Ala. 2002) .............................................................................. 23

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ............................................................................................... 11

*Moldea v. New York Times Co.*,
  22 F.3d 310 (D.C. Cir. 1994) ............................................................................. 15

*Mr. Chow of New York v. Ste. Jour Azur S.A.*,
  759 F.2d 219 (2d Cir. 1985) ............................................................................... 13

DWT 13053622v1 0080721-000006

*Philadelphia Newspapers, Inc. v. Hepps*,
  475 U.S. 767 (1986) ...................................................................................... 18

*Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*,
  829 F.2d 1280 (4th Cir. 1987)........................................................................ 12

*Presidio Enter. v. Warner Bros. Distrib. Corp.*,
  784 F.2d 674 (5th Cir. 1986)........................................................................... 12

*Ramsey v. Sentell Oil Co.*,
  195 So. 2d 527 (Ala. 1967) ............................................................................ 22

*Sanders v. Smitherman*,
  776 So. 2d 68 (Ala. 2000) ........................................................................ 10, 17

*Shook v. St. Bede Sch*.
  74 F. Supp.2d 1172 (M.D. Ala. 1999) ............................................................ 20

*Smith v. Huntsville Times Co., Inc.*,
  888 So. 2d 492 (Ala. 2004) ............................................................................ 21

*South Dakota v. Kansas City Southern Industries*,
  880 F.2d 40 (8th Cir. 1989)............................................................................ 22

*Stuart v. Gambling Times, Inc.*,
  534 F. Supp. 170 (D.N.J. 1982) ..................................................................... 13

*Thomas v. Los Angeles Times Communications, LLC*,
  189 F. Supp.2d 1005 (C.D. Cal.), *aff'd on other grounds*,
  45 Fed. Appx. 801 (9th Cir. 2002) .................................................................. 13

*Thompson-Hayward Chemical Co. v. Childress*,
  169 So. 2d 305 (Ala. 1964) ............................................................................ 22

*Trump v. Chicago Tribune Co.*,
  616 F. Supp. 1434 (S.D.N.Y. 1985)................................................................ 13

*TSC Industries, Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) ...................................................................................... 19

*Unelko Corp. v. Rooney*,
  912 F.2d 1049 (9th Cir. 1990)........................................................................ 21

v

*United States Steel, LLC v. Tieco, Inc.*,
  261 F.3d 1275 (11th Cir. 2001)......................................................................... 14

*Universal Express, Inc. v. United States SEC*,
  177 Fed. Appx. 52 (11th Cir. 2006).................................................................... 8

*Wilchombe v. TeeVee Toons, Inc.*
  555 F.3d 949 (11th Cir. 2009)............................................................................ 6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................................ *passim*

Defendants Gawker Media, LLC ("Gawker"), Jalopnik.com ("Jalopnik"), and Wes Siler ("Siler") (collectively, the "Gawker Defendants") respectfully move the Court to enter an Order under Federal Rule of Civil Procedure 12(b)(6) dismissing all claims by plaintiff Confederate Motors, Inc. ("Plaintiff" or "Confederate") for failure to state a claim upon which relief can be granted.  In support of this motion, the Gawker Defendants submit the following memorandum of law:

## **INTRODUCTION**

Plaintiff – unhappy with a website's editorial review of its products and reputation – has attempted to assert libel claims against its critic.  It is well established, however, that although plaintiff may dislike the review, such opinions are protected under the First Amendment.  Furthermore, to the extent the website's review contained any statements of fact, they were substantially true, as established conclusively by public records of which the Court may take judicial notice.

Plaintiff alleges two additional causes of action, nominally for gross negligence and tortious interference with business relations, but those are simply reconfigurations of its libel claims.  Plaintiff cannot escape the protection of the First Amendment by cloaking its libel claims in the guise of other torts.  Nor does it state the required elements of either cause of action.

1

## STATEMENT OF FACTS

*The Parties*

Plaintiff Confederate Motors, Inc. ("Confederate"), a Delaware corporation with its principal office and place of business in Alabama, manufactures and sells motorcycles. (Compl. ¶¶ 1 and 6)[1] Confederate Motor Company, Inc. is its predecessor in interest (Compl. ¶ 10); publicly available corporate records show that plaintiff previously did business as Confederate Motorcycles, Inc., with Confederate's founder and officer, H. Matthew Chambers, as its president and registered agent.[2]

Defendant Gawker Media LLC is a Delaware corporation with its principal place of business in New York. (Compl. ¶ 2). It owns defendant Jalopnik.com, a website for persons "obsessed with the cult of cars." (Compl. ¶¶ 2, 7). Defendant Wes Siler is a road-test editor and writer for the Jalopnik website. (*Id.*)[3]

---

[1] References to "Compl. ¶ __" are to the Complaint filed by Confederate, on May 14, 2009, a copy of which is annexed as Exhibit A to the Declaration of James Rosenfeld, executed on June 30, 2009 ("Rosenfeld Decl."), submitted herewith.

[2] As explained in greater detail *infra* at (I)(B), the Gawker Defendants respectfully request that the Court take judicial notice of Confederate's corporate records, attached as Exh. B to the Rosenfeld Decl.

[3] In its Complaint, Plaintiff also names defendant Grant Ray and claims that Ray is an employee of Gawker. Compl. ¶ 8. Although not relevant to this motion, if this action continues into discovery, Gawker will show that defendant Ray is not, and has never been, employed or affiliated in any way with Gawker.

DWT 13053622v1 0080721-000006

***The Publication***

On April 9, 2009, Siler authored a short post (the "Post") on Jalopnik.com

that reads, in pertinent part, as follows:

> Among all the shiny concept cars at the New York Auto
> Show, there's also three bikes.  Confederate's Wraith,
> Fighter and Hellcat are scary pieces of rolling robotic art.
> And we mean rolling literally, because, according to
> anecdotal evidence from multiple owners and former
> employees, Confederate's motorcycles have proven so
> unreliable that you'll probably have to push them.  In
> fact, it's surprising to see them at the New York Auto
> Show today since last we heard the Alabama-based
> company was being sued so heavily in state courts by
> disgruntled owners that they were unable to do business
> here.

*See* Compl. ¶ 7 and Ex. A.  This quotation is the focus of Plaintiff's entire case.

While Plaintiff argues in his complaint that the "implication is that

(Confederate) has been repeatedly sued in many state courts by disgruntled

owners," and that this implication is misleading (Compl. ¶ 10), its own account of

its long litigation history contradicts that assertion.  It admits that it and

Confederate Motor Company, Inc., have been the subject of "ordinary suits

normally associated with transacting business."  (Compl. ¶ 10).  Plaintiff does not

deny that disgruntled owners have brought these "ordinary suits" – denying only

that they have done so in state court in New York – and yet even in New York it

admits that a disgruntled owner initiated an arbitration against it for failure to

repair.  (*Id.*)  As to the various other "ordinary suits" which Plaintiff freely admits

have been brought against the Confederate entities, it merely alleges that it did not decide any of these suits were "material" for purposes of a recent federal securities filing (an SEC Form 8-K).  (*Id.*)

Moreover, public records show definitively that the company has been sued repeatedly in state court actions, including multiple suits brought by disgruntled owners.[4]  For example, in *Metevier v. Confederate Motorcycles, Inc.*, No. 438826 CJB (19th Jud. Dist. Ct., Parish of E. Baton Rouge 1997), petitioner sought a rescission of his purchase of a 1996 Confederate motorcycle, based on its persistent oil leak, bad fenders, improperly welded gas tank, defective headlight, substantial transmission problems and other defects.  (*See* Rosenfeld Decl., Ex. C). In *Barta v. Confederate Motorcycles*, No. 459674M (19th Jud. Dist. Ct., Parish of E. Baton Rouge 1999), petitioner sought the return of the purchase price of his 1996 Confederate motorcycle due to "[n]umerous mechanical defects in the drivetrain, engine, clutch, ignition switch, and electrical system." (*Id.*)  Finally, in *Confederate Motor Co. v. Barlow*, No. 06117108 (Sup. Ct., N.Y. Cty 2006), the "failure to repair" claim which plaintiff characterizes as an "arbitration action", Confederate sought to confirm its arbitration award in New York state court.  (*Id.*) Public records further show that plaintiff has also been sued in numerous other state court cases, including:

---

[4] The Gawker Defendants respectfully request the Court to take judicial notice of these court filings, attached as Exhibit C and D to the Rosenfeld Declaration.  *See infra*, p. 8.

- James Eric Reed vs. Confederate Motorcycles Inc.
- Ford Motor Credit Co. vs. Confederate Motorcycles Inc.
- Ryerson Tull/Alco Metals Inc. vs. Confederate Motorcycles Inc.
- Wells Fargo Financial Leasing Inc. vs. Confederate Motorcycles Inc.
- Crane Technologies Group vs. Confederate Motorcycles Inc.
- GE Capital Colonial Pacific Leasing vs. Confederate Motorcycles Inc.
- Citicapital Commercial Leasing Corp. vs. Confederate Motorcycles Inc.
- Citizens Bank and Trust Co. v. Confederate Motorcycles Inc. and Matthew H. Chambers
- Hibernia National Bank v. Confederate Motorcycles Inc. and Matthew H. Chambers
- Begnaud Manufacturing Inc. v. Confederate Motorcycles Inc.

(*See* Rosenfeld Decl., Ex. D).

### *The Claims and Requests for Relief*

Plaintiff filed the present lawsuit on or about May 14, 2009.  It asserts four causes of action against the Gawker Defendants, for libel per se (Comp. ¶¶ 13-18), tortious interference with business relations (Compl. ¶¶ 19-22), gross negligence (*Id.*, ¶¶ 23-26) and libel per quod (*Id.* ¶¶ 104-110).

Plaintiff does not allege any concrete harm that the Post has caused – just that it "has received numerous inquiries from shareholders regarding this article and the result is a loss of shareholder confidence."  Compl. ¶ 11.  It does not make any factual allegations regarding cancelled sales, a drop in share price, lost customers or any other specific damages.  Nonetheless, with respect to each of these claims, the Complaint seeks unspecified compensatory and punitive damages, as well as a preliminary injunction.  For the reasons set forth herein, each

5

of these claims and the Complaint in its entirety should be dismissed for failure to state a claim.

## ARGUMENT

### I.

### THE COURT MAY DISMISS
### PLAINTIFF'S CLAIMS AS A MATTER OF LAW

A.      **Rule 12(b)(6) Standard After** *Twombly*

On a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).  However, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court abrogated the long-reigning principle that dismissal is inappropriate "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and imposed a more demanding Rule 12(b)(6) standard:

> While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Twombly*, 550 U.S. at 555.  A plaintiff must provide enough factual allegations, which are assumed to be true, "to raise a right to relief above the speculative level." *Id.*; *see also Wilchombe v. TeeVee Toons, Inc.* 555 F.3d 949, 958 (11th Cir. 2009); *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004) (plaintiffs must allege specific factual bases for their legal conclusions to avoid dismissal of their claims).

Thus, after *Twombly*, the issue is whether the pleading alleges "enough facts to state a claim for relief that is plausible on its face," rather than merely possible. *Twombly*, 550 U.S. at 570.  Where, as here, plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Conclusory legal assertions flatly contradicted by the plaintiff's other allegations and the publication at issue do not permit a reasonable inference of liability and therefore do not satisfy the plausibility standard.

The Court may dismiss plaintiff's claims on this motion.  Whether the statements at issue are reasonably susceptible of a defamatory meaning by virtue of expressing protected opinion and hyperbolic speech are questions of law.

*Finebaum v. Coulter*, 854 So. 2d 1120, 1128 (Ala. 2003).  Moreover, even accepting all of Plaintiff's allegations, they do not permit a reasonable inference of liability under the new governing Supreme Court precedent, as discussed below.

**B.      Judicial Notice of Public Records**

The Eleventh Circuit has held that a court may take judicial notice of public records on a motion to dismiss without converting the motion to a motion for summary judgment. *See Universal Express, Inc. v. United States SEC*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) ("[p]ublic records are among the permissible facts that a district court may consider" on a motion to dismiss) (citation omitted) (finding Complaint filed by the Securities and Exchange Commission in civil enforcement action in another district was a public document that district court could consider without converting motion to dismiss into motion for summary judgment); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999) (holding that district courts may properly take judicial notice of public securities filings).  Thus, the Court may consider the publicly available corporate records and court filings attached to the Rosenfeld Declaration, even under the Rule 12(b)(6) standard.

**II.**

## PLAINTIFF'S LIBEL CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's claims run head-on into the First Amendment, which bars lawsuits chilling free speech. "'The freedom to speak one's mind is not only an aspect of individual liberty – and thus a good unto itself – but also is essential to the common quest for truth and the vitality of society as a whole.'" *Hustler Magazine v. Falwell,* 485 U.S. 46, 50-51 (1988) (*quoting Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 503-04 (1984)). "'Because the threat or actual imposition of pecuniary liability for alleged defamation may impair the unfettered exercise of … First Amendment freedoms, the Constitution imposes stringent limitations upon the permissible scope of such liability.'" *Finebaum*, 854 So. 2d at 1124 (*quoting Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 12 (1970)).

These principles are particularly important when considering expressions that represent the speaker's evaluations or points of view. "Under our Constitution 'there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.'" *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 504 (1984) (*quoting Gertz v. Robert Welch*, 418 U.S. 323, 339-40 (1974)). "'The fact that society may find speech offensive is not a sufficient

9

reason for suppressing it.  Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection.  For it is a central tenet of the First Amendment that the government must remain neutral in the marketplace of ideas.'"  *Finebaum*, 854 So. 2d at 1128 (quoting *Falwell*, 485 U.S. at 55-56).

Plaintiff has not alleged any statements by Defendants which constitute libel per se, and its libel per quod claim fails because the Post is comprised of nothing more than editorial opinion substantially true facts, both of which are protected by the First Amendment.

## A.    The Publication Is Not Libelous Per Se

Plaintiff's Complaint fails to state a claim for libel per se.  Libel per se requires the defamatory statements to "impute[] to the plaintiff an indictable offense involving infamy or moral turpitude."  *Anderton v. Gentry*, 577 So. 2d 1261 (Ala. 1991).  The publication in this instance does not make, or even attempt to make, such allegations of a crime, much less one involving infamy or moral turpitude.  As a result Plaintiff has not alleged the elements of a libel per se claim, and therefore that claim should be dismissed as a matter of law.

## B.    The Publication Contains  Constitutionally Protected Opinion

It is a long-settled First Amendment rule that a speaker ordinarily cannot be sued for simply expressing his opinion, no matter how derogatory the opinion may

10

be. *Sanders v. Smitherman*, 776 So. 2d 68, 74 (Ala. 2000). This protection exists because opinions represent subjective conclusions and personal viewpoints, often about another's attitudes, beliefs, or personality traits. These types of statements are not proper subjects of a libel or slander claim, because a statement "must be provable as false before there can be liability under state defamation law…." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) (emphasis added).

### 1.      *Reviews and Commentary*

In examining whether a statement should receive protection, the Court focuses on whether the "statement implies an assertion of objective fact," *Hammer v. City of Osage Beach, Mo.*, 318 F.3d 832, 842 (8th Cir. 2003), or is capable of being proved false by "objective evidence." *Milkovich*, 497 U.S. at 21. If not, the statement is protected. *See Aviation Charter, Inc. v. Aviation Research Group/U.S.*, 416 F.3d 864, 868 (8th Cir. 2005) (statements that "reasonably cannot be interpreted as stating facts are protected from defamation actions by the First Amendment"). Thus, "(v)ague, unprovable statements and statements of opinion do not give rise to a defamation claim…." *Lifton v. Board of Educ. of City of Chicago*, 416 F.3d 571, 578-79 (7th Cir. 2005) (that the plaintiff was "'burnt out,' 'looking for sympathy,' 'unstable,' 'resting her laurels,' and 'doesn't want to work'' were held to be "nonactionable statements of opinion that do not contain objectively verifiable factual assertions").

11

Numerous courts have addressed statements similar to those challenged by Plaintiff here, and concluded that they could not support a defamation action. For example, in a strikingly similar case, the Fourth Circuit found that a statement that company's product test "'was a (purposely) very poor test designed to snow the customer'" was "a constitutionally protected expression of opinion". *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1285 (4th Cir. 1987). Similarly, in *Elite Funding Corp. v. Mid-Hudson Better Bus. Bureau,* 165 Misc.2d 497, 500 (N.Y. Sup. 1995), the court ruled that a statement that a brokerage had an "unsatisfactory record" was an opinion based upon stated facts and therefore not actionable.

The cases uniformly classify reviews and critical commentary as protected opinion. *See also Aviation Charter*, 416 F.3d at 871 (assessment by publisher of air charter safety ratings that company had unfavorable safety record was not sufficiently factual to be provably false); *Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 855-56 (10th Cir. 1999) (bond rating agency's reporting of "negative outlook" on school district's general obligation bonds was protected opinion); *Presidio Enter. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986) (statement by producer that film would be a "blockbuster" not actionable under a state consumer protection statute, noting "opinions and beliefs reside in an inner sphere of human personality and

12

subjectivity that lies beyond the reach of the law and is not subject to its

sanctions").[5]

Here, the statements in the Post are not actionable because they do not imply

the existence of a fact about plaintiff that can be proven false by objective

evidence. Instead, they are Siler's subjective, generalized viewpoint of

Confederate's products and reputation. Siler's description of the motorcycles as

"scary pieces of rolling robotic art" is neither an assertion of objective fact or

capable of being proven true or false by objective fact. It is merely an imaginative

expression of the writer's opinion on the motorcycles. Similarly, anecdotal

evidence that the motorcycles have proven "unreliable" is pure opinion, as it is

based in individual owners' and employees' expectations and beliefs, and cannot

be subjected to the test of truth or falsity. The writer's feelings of "surprise" that

Confederate participated in the New York Auto Show, and his belief that

---

[5] *See also Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219 (2d Cir. 1985) (allegedly libelous statements in review were protected opinion); *Hammer v. Amazon.com,* 392 F. Supp.2d 423, 430-31 (E.D.N.Y. 2005) (bookseller's failure to remove consumer reviews of plaintiff author's books from its website lawful); *Agora, Inc. v. Axxess, Inc.,* 90 F. Supp.2d 697, 703 (D. Md. 2000) (rating of financial news letter as "unpaid promoter" was opinion based on clearly disclosed facts), *aff'd,* 11 Fed. Appx. 99 (4th Cir. 2001); *Thomas v. Los Angeles Times Communications, LLC*, 189 F. Supp.2d 1005, 1015-16 (C.D. Cal.) (statements in feature article questioning factual basis of book were protected opinion), *aff'd on other grounds*, 45 Fed. Appx. 801, 803 (9th Cir. 2002); *Trump v. Chicago Tribune Co.*, 616 F. Supp. 1434, 1435-36 (S.D.N.Y. 1985) (finding commentary by architecture critic absolutely privileged, noting "one's opinion of another, however unreasonable the opinion or vituperative, since [it] cannot be subjected to the test of truth or falsity… [is] entitled to absolute immunity from liability") (citations omitted); *Stuart v. Gambling Times, Inc.*, 534 F. Supp. 170, 171 (D.N.J. 1982) (statement that plaintiff's book was "the #1 fraud ever perpetrated upon the gambling reader" was protected opinion); *Baker v. Los Angeles Herald Exam'r*, 721 P.2d 87 (Cal. 1986) (statements by television critic criticizing sex education documentary film were protected opinions); *Mashburn v. Collin*, 355 So. 2d 879, 888-89 (La. 1977) (critical review of restaurant was protected opinion.

13

Confederate would have trouble doing business at the Show are typical statements of reviews and critical commentary that courts find to be protected opinion. Both Siler's surprise, and his belief that Confederate would have difficulty doing business are subjective responses to stated facts that amount to protected opinion.

Furthermore, in evaluating these statements in the Post, the court must construe the statements "in connection with the other parts of the conversation [or written materials], in order to determine the context in which the statement was made." *Butler v. Town of Argo*, 871 So. 2d 1, 17 (Ala. 2003) (internal citation omitted); *see also id.* at 19 (court must consider the "full context" in which the statement was made); *Labor Review Pub. Co. v. Galliher*, 45 So. 188, 190 (Ala. 1907) ("in construing alleged libelous publications, the whole must be considered"); *United States Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1293 (11th Cir. 2001) (under Alabama law, the court must construe the statement in light of all the surrounding circumstances). As one court observed, "[c]ontext is critical to the meaning because a false statement that is defamatory on its face may not be defamatory when read in context." *Aviation Charter*, 416 F.3d at 868 (citation omitted).

Courts consistently find that readers normally do not expect to find assertions of objective fact in reviews and commentaries such as appear on Jalopnik. *See, e.g., Cochran v. NYP Holdings, Inc.*, 58 F. Supp.2d 1113, 1125

14

(C.D. Cal. 1998), ("The audience… would reasonably expect the alleged defamatory statement to constitute… opinion.") (examining critical commentary about plaintiff in the general context of the opinionated and political-minded column in which it appeared, and in the specific context of a collection of opinions, colorfully expressed), *aff'd*, 210 F.3d 1036 (9th Cir. 2000); *Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994) (rejecting a defamation claim that plaintiff engaged in "sloppy journalism" where "[t]he challenged statements were evaluations of a literary work which appeared in a forum in which readers expect to find such evaluations."). The Post was published in the overall context of anecdotal statements gathered from various sources, on a blog known for its sardonic humor, gossipy tone and hyperbole. No reasonable reader could understand the commentary here to be anything but pure opinion.

## 2. *Hyperbole*

Under both the federal and Alabama Constitutions, statements lacking a provably false factual connotation, including "(i)maginative expression and the rhetorical hyperbole traditionally used in public debate are protected" will not support an action for defamation. *Deutsch v. Birmingham Post Co.*, 603 So. 2d 910, 912 (Ala. 1992) (internal citations omitted). Indeed, "[t]he law provides no redress for harsh name-calling," *Flowers v. Carville*, 310 F.3d 1118, 1127 (9th Cir. 2002), because "one of the prerogatives of American citizenship is the right to

criticize … men and measures." *Falwell*, 485 U.S. at 51.  The Gawker Defendants exercised that right here.

State and federal courts have issued countless decisions holding that epithets, name-calling, hyperbole, loose and figurative language, and imaginative expression reveal only the speaker's point of view and are not actionable as a matter of law.  In *Finebaum v. Coulter*, 854 So. 2d 1120, for example, a sports journalist, Matt Coulter, sued another sports journalist, Paul Finebaum, for defamation based on statements Finebaum made about Coulter during a radio talk show.  Specifically, Finebaum had listened to Coulter's radio talk show and later said on his (Finebaum's) show that Coulter and a caller "'really slobbered over each other, I mean, I really thought they were going to start performing oral sex on one another, it was so sickening.'"  *Id*. at 1123.  Coulter then sued, claiming that Finebaum had implied that Coulter was "'a homosexual.'"  *Id*. at 1122.

The Alabama Supreme Court held that Finebaum's statement was not defamatory and that he was entitled to a judgment as a matter of law.  "[Finebaum's statement] was not a statement that can reasonably be interpreted as stating actual facts about Coulter.  Finebaum's statement is only rhetorical hyperbole, which the United States Supreme Court has held protected by the First Amendment."  854 So. 2d at 1128-29 (citation omitted).  *Accord Gilbrook v. City of Westminster*, 177 F.3d 839, 862 (9th Cir. 1999) (reference to plaintiff as a

16

"Jimmy Hoffa" figure "constitutes the type of 'colorful, figurative rhetoric' that reasonable minds would not take to be factual"); *Sanders*, 776 So. 2d at 75 (alleged defamatory statements in a pamphlet were "hyperbole or exaggeration [used] for effect, not to be taken literally," and thus protected by the Constitution); *Geraci v. Eckankar*, 526 N.W.2d 391, 397 (Minn. Ct. App. 1995) (statements that plaintiff had "poisoned the board," was "out of control," a "bad influence," "emotional," and "not a team player" were inactionable epithets and hyperbole).

Here, Plaintiff complains about speech which is protected hyperbolic expression. The statement that the motorcycles "have proven so unreliable that you'll probably have to push them" is colorful exaggeration, and it is plain on its face that this statement is not a literal assertion that one would have to push the motorcycle. Similarly, the statement that Confederate had been sued so heavily that the writer thought Confederate would be "unable to do business" at the Show is the type of imaginative expression and rhetorical hyperbole that courts routinely find to be inactionable. It is an exaggerated belief meant to attract attention, and would not leave the average reader with the understanding that it was stating objective facts.

C.    **The Post's Statement Regarding Prior Court Actions Is Substantially True**

It is axiomatic that substantial truth, not literal truth, is all that is required to defeat a libel claim. *Ala. Ride Co. v. Vance*, 178 So. 438 (1938); *Kirkpatrick v.*

17

*Journal Publ'g Co.*, 97 So. 58 (1923).  It is a bedrock principle of First

Amendment jurisprudence that plaintiff bears the burden to "show the falsity of the

statements at issue in order to prevail in a suit for defamation."  *Philadelphia*

*Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986).  It is not enough for

plaintiffs to argue that references are in some way inaccurate; they must also

establish that the complained of statements are substantially false.  In *Masson v.*

*New Yorker Magazine, Inc.*, 501 U.S. 496 (1991), the Supreme Court described the

necessary inquiry as follows:

> Minor inaccuracies do not amount to falsity so long as
> "the substance, the gist, the sting, of the libelous charge
> be justified."

*Id*. at 517 (citation omitted).  Thus, if the "gist" or "sting" of a statement is

accurate, dismissal is warranted regardless of inaccuracies.  *Id.*  A statement will

only be considered false "if it produces a different effect on the mind of the

reasonable reader than would the truth."  *Dunn v. Air Line Pilots Ass'n*, 193 F.3d

1185, 1203 (11th Cir. 1999).

Plaintiff challenges the truth of only one factual assertion in the Post:  Siler's

statement that he was surprised to see Plaintiff at the New York Auto Show

because "last we heard [Confederate] was being sued so heavily in state courts by

disgruntled owners that they were unable to do business here."  Yet the "gist" or

"sting" of this statement is plainly that the author was surprised to see the company

18

doing business at the Auto Show because he had understood the Company had been through various legal troubles – specifically that it had been named as defendant in a number of state court actions.  However, the careful qualifications the Complaint makes in the very same paragraph completely undermine its challenge, and indeed concede the substantial truth of Jalopnik's statement.  Again, the Complaint admits that Confederate has been the subject of "ordinary suits," does not deny that "disgruntled owners" have brought these suits as the Post suggests (only denying that owners have brought suits in New York – a denial contradicted by the public record of at least one such suit), and simply makes the meek claim that none of the suits were "material" for purposes of its 8-K filing, a classification that is totally irrelevant for these purposes and which all but concedes the existence of other smaller suits.[6]  And as discussed above, the public records reveal that a number of the state court litigations against Confederate were indeed brought by disgruntled owners – Mr. Metevier, Mr. Barta and Mr. Barlow.

The public records of Confederate's extensive litigation history establish conclusively the substantial truth of the Post's statement.  Given that corporate records suggest that Confederate Motors, Inc., Confederate Motor Company, Inc., and Confederate Motorcycles Inc. are essentially the same entity, with essentially

---

[6] Information is material if "there is a substantial likelihood that a reasonable shareholder would consider [it] important in deciding how to vote."  *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  Of course, a suit by an owner over a faulty motorcycle would not rise to the level of materiality in the securities law sense, and would not be listed on a Form 8-K.

DWT 13053622v1 0080721-000006

the same names, principal, business and business address (save for the company's

move from Louisiana to Alabama at one point), the fact that most of the state court

suits were filed against Confederate Motorcycles Inc. rather than Confederate

Motors Inc. is a meaningless distinction which would not produce a different effect

on the mind of the reasonable reader.  As a result, the Court should rule that as a

matter of law that plaintiff cannot meet its burden of establishing substantial

falsity, and plaintiff's libel claim should be dismissed.

**D.     Plaintiff Fails to Plead the Required Element of Special Damages**

Under Alabama law, an essential element of an action for libel per quod is

that the plaintiff plead and be able to show special damages.  *See Casey v.*

*McConnell*, 975 So. 2d 384, 390 (Ala. Civ. App. 2007).  "'Special damages are the

material harms that are the intended result or natural consequence of the

[defamatory] statement, and the general rule is that they are limited to "material

loss capable of being measured in money."  *Butler*, 871 So. 2d at 18 (*quoting*

*Shook v. St. Bede Sch*. 74 F. Supp.2d 1172, 1180 (M.D. Ala. 1999)) (internal

citations omitted).  Plaintiff's Complaint fails to plead any special damages.  The

Complaint does not identify any material harms that it suffered, and certainly none

that are capable of being measured in money.  The only harm that Plaintiff

specifically alleges is that the company "has received numerous inquiries from

shareholders regarding this article and the result is a loss of shareholder

20

confidence." Compl. ¶ 11.  The Complaint does not make any factual allegations

regarding cancelled sales, a drop in share price, lost customers or any losses that

can be measured in money.[7]  Accordingly, Plaintiff's claim for libel per quod

should be dismissed.

## III.

## PLAINTIFF'S TORT CLAIMS FAIL AS A MATTER OF LAW

Confederate's additional claims of gross negligence and tortious interference

with business relations fail as well.  The Supreme Court has long held that a

plaintiff cannot dress up a defamation claim as another tort in order to circumvent

the First Amendment protections.  *See Falwell*, 485 U.S. at 53.  Lower courts have

applied this principle to various torts that, as pled, are inseparable from the tort of

defamation.  *See Smith v. Huntsville Times Co., Inc.*, 888 So. 2d 492, 496 n. 1 (Ala.

2004) (stating that same standard applies to claims of defamation or false light

invasion of privacy, regardless of how the claims are styled); *see also Colon v. City

of Rochester*, 307 A.D.2d 742, 744 (4th Dep't 2003) ("A defamation cause of

action is not transformed into one for negligence merely by casting it as such");

*Jefferson County*, 175 F.3d at 857-58 (affirming dismissal of intentional

interference with contractual and business relations claims); *Unelko Corp. v.

Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (that state law claims for trade libel

---

[7] Indeed, should this case go forward, Gawker Defendants will establish that Confederate's share price has not dropped at all since the publication.

and tortious interference with business relationships were subject to the same First Amendment requirements as claims for defamation); *South Dakota v. Kansas City Southern Industries*, 880 F.2d 40, 50-54 (8th Cir. 1989) (concluding that the plaintiff could not bring a claim for tortious interference with contract because the claim was based on the defendant's filing of a lawsuit, an activity protected by the First Amendment).  Thus, where – as here – plaintiff alleges Defendants' publication has caused it harm, the claim should be dismissed.

Nor does Plaintiff satisfy the required elements to state a cause of action for negligence.  "In Alabama, negligence may be alleged in general terms, but a complaint is not sufficient unless facts are averred which disclose a duty owed by the defendant to the injured party and a breach of that duty."  *Ramsey v. Sentell Oil Co.*, 195 So. 2d 527, 529 (Ala. 1967); *see also Thompson-Hayward Chemical Co. v. Childress*, 169 So. 2d 305, 312 (Ala. 1964) ("in negligence cases, the complaint must allege facts from which a duty of care arises on the part of the defendant; the relationship of the parties must be stated in order to establish a duty; and, without the element of duty, a cause of action is not stated.")  The Complaint is utterly silent as to any allegation that a special relationship existed between Plaintiff and any of the Gawker Defendants that would give rise to any duty.  *See* Compl., ¶ 23-26.  Indeed, no such relationship and no such duty exist.  Accordingly, Plaintiff's gross negligence claim should be dismissed.

In addition, to state a claim for tortious interference with business relations, a plaintiff must show an existing and specific contract or business relation was damaged; defendant's knowledge of that existing and specific business relation; and intentional interference with it, which caused the damage. *See Michelin Tire Corp. v. Goff*, 864 So. 2d 1068, (Ala. 2002). Confederate's complaint completely fails to identify any such existing or specific agreement or relation which suffered damage. Indeed, the complaint is utterly silent as to any agreements with particular customers that were harmed, or relations with specific potential customers that were damaged as a result of the Post. Nor does the complaint sufficiently allege Confederate's knowledge of the business relation. A defendant's general knowledge that a corporate entity is in business and has clients cannot satisfy the element of knowledge required to state a claim. Thus, Confederate's conclusory pleading that "A business relation and agreement existed between the plaintiff and its customers and potential customers with the full knowledge of the defendant" (Complaint ¶ 20) is far afield from satisfying the requirements of the tort.

## **CONCLUSION**

Given the clearly protected nature of the speech at issue, and particularly in the wake of *Twombly*, this is exactly the sort of Complaint which fails to make

sufficient allegations to nudge Plaintiff's claims "from conceivable to plausible,"

550 U.S. at 570, and should therefore be dismissed.

**WHEREFORE, PREMISES CONSIDERED**, Gawker Defendants

respectfully request that this Court, pursuant to Fed. R. Civ. P. 12(b)(6), grant their

motion to dismiss the Complaint in its entirety.


Dated:  New York, New York
             June 30, 2009

Respectfully submitted,

*/s/ Forrest S. Latta*
Forrest S. Latta
Richard J. Davis
*Attorneys for Defendants Gawker Media,*
*Jalopnik.com and West Siler*


OF COUNSEL:

Forrest S. Latta
Richard J. Davis
BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
Email: forrest.latta@burr.com
             rdavis@burr.com

James Rosenfeld (admitted pro hac vice)
Deborah Adler (admitted pro hac vice)
DAVIS WRIGHT TREMAINE LLP
1633 Broadway, 27th Floor
New York, New York 10019
Telephone: (212) 489-8230
Facsimile: (212) 489-8340
Email: jamesrosenfeld@dwt.com
             deborahadler@dwt.com

24

## **CERTIFICATE OF SERVICE**

     I hereby certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all counsel who have entered an appearance in this action on this the 30th day of June, 2009.


                           */s/ Richard J. Davis*
                           OF COUNSEL