FILED
2010 Mar-24  AM 09:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CONFEDERATE MOTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:09-cv-00949-JEO |
| | ) | |
| WES SILER; GRANT RAY; JALOPNIK.COM; | ) | |
| and GAWKER MEDIA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the court is the motion of defendants Wes Siler, Jalopnik.com, and Gawker Media

to dismiss this action under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).[1]  (Doc. 12).  The

parties have been afforded an opportunity to brief the relevant issues.  Upon consideration, the

court finds that the motion is due to be granted only as to the claim for libel *per se* and gross

negligence and denied as to the claims for libel *per quod* and tortious interference with business

relations.

## I.     BACKGROUND

### A.     Procedural History

The plaintiff, Confederate Motors, Inc. ("Confederate" or "the plaintiff"), filed a

complaint against defendants Wes Siler ("Siler"), Grant Ray ("Ray"), Jalopnik.com ("Jalopnik"),

and Gawker Media, LLC ("Gawker") in this court on May 14, 2009, premised on diversity

jurisdiction.  (Doc. 1 at ¶ 1 ("the complaint")).  In the complaint, Confederate alleges that

defendants Siler, Jalopnik, and Gawker committed libel *per se* (Count One) as well as libel *per*

---

[1] Defendant Grant Ray has not been served.  That matter will be addressed by separate
order.

*quod* (Count Four) when defendant Siler posted an article on defendant Jalopnik.com which "stat[ed] that Plaintiff's products are unreliable" and that the plaintiff was "an Alabama company unfit to do business in the State of New York." (Complaint at ¶ 7-8).  The complaint also alleges that the same defendants committed both tortious interference with business relations (Count Two) and gross negligence (Count Three) as a result of the same conduct of the defendants. (Complaint ¶ 11).  Defendant Ray was included in both the tortious interference and libel *per quod* claims, but not the gross negligence or libel *per se* claims.  Confederate requests that this court grant a preliminary injunction to stop defendants from "continu[ing] to injure the ongoing business and goodwill of [Confederate]."  (Complaint ¶ 34-37).  In its prayer for relief, the plaintiff requests actual and punitive damages stemming from the alleged injury, as well as a permanent injunction.

Defendants Siler, Jalopnik, and Gawker subsequently filed the present motion to dismiss on June 30, 2009.  (Doc. 11).  The defendants assert that this motion is due to be granted because the plaintiff has failed to state a claim upon which relief can be granted in accordance with FED. R. CIV. P. 12(b)(6).  (Doc 12 at 1).

### B.      Factual History

Confederate is a corporation organized under the laws of Delaware, with its principal place of business in Alabama.  (Complaint at ¶ 1).  Confederate manufactures and sells high performance motorcycles.  (*Id*. at ¶ 6).  Confederate Motor Company, Inc. is its predecessor in interest.  (*Id*.; Doc. 12 at 2).  Defendant Jalopnik is a wholly-owned subsidiary of defendant Gawker Media, LLC, which is incorporated under the laws of Delaware and has its principal place of business located in New York. (Complaint at ¶¶ 2, 7).

It is undisputed that on April 9, 2009, Siler posted the alleged libelous article on

Jalopnik's website. (Complaint at ¶ 7; Doc. 12 at 3).  The article reads:

> Among all the shiny concept cars at the New York Auto Show, there's
> also three bikes.  Confederate's Wraith, Fighter and Hellcat are scary pieces of
> rolling robotic art.
>
> And we mean rolling literally, because according to anecdotal evidence
> from multiple owners and former employees, Confederate's motorcycles have
> proven so unreliable that you'll probably have to push them.  In fact, it's
> surprising to see them at the New York Auto Show today since last we heard the
> Alabama-based company was being sued so heavily in state courts by disgruntled
> owners that they were unable to do business here.

(Doc. 1-2 at 2).

Confederate alleges that the offending publication contains "intentionally misleading

statements."  Specifically, the language "implicati[ng] that Confederate has been sued repeatedly

in many state courts by disgruntled owners." (Complaint at ¶¶ 8, 10).  Confederate admits that

there have been civil actions filed against both it and its predecessor in interest, Confederate

Motor Company, Inc., but states that these are "ordinary suits normally associated with

transacting business." (*Id*. at ¶ 10).

Confederate alleges in the complaint that defendant Ray, a former employee who now

works for Gawker, sent an email threatening revenge if Confederate did not "allow the Defendant

[Ray] the use of a motorcycle for a trade show." (Complaint at ¶ 8-9).  Specifically the email

from Ray to Confederate states, "[i]f you continue this paranoid delusion of me sabotaging a

brand I HELPED BUILD and refuse HFL the showing of a Wraith, it WILL be the worst

marketing mistake you will EVER make." (Doc. 1-3 at 2).  Confederate claims that the

offending article published on Jalopnik's website by Siler is the result of the threat being brought

to bear, and that "there is a concerted effort by all Defendants to disparage the Plaintiff."

(Complaint at ¶ 9).

Demand was made by Confederate's counsel for the allegedly libelous article to be taken

down on April 13, 2009.  Jalopnik refused, stating that the article was merely a review based on

opinion, not fact.  (Doc. 1-4 at 2-3).  The article was still being published on the web on May 14,

2009, and the defendants have not given any indication that the article has since been removed.

(Complaint at ¶ 9).

## II.     STANDARD OF REVIEW

When reviewing a motion to dismiss filed pursuant to FED. R. CIV. P. 12(b)(6), this court

must view the facts in a light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335

(11th Cir. 2003).  This court is required to accept as true all well-pleaded facts.  *Ashcroft v.*

*Iqbqal*, 556 U.S. ___, 129 S. Ct. 1937 (2009) (noting "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions")); *Erickson v.*

*Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007).  While it is true that under FED. R. CIV. P.

8(a)(2) the plaintiff is required only to plead a "short and plain statement of the claim showing

that the pleader is entitled to relief," the plaintiff is still required to plead "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).  When taken as true, the

pleaded facts must raise a right to relief above the level of mere speculation.  *Id*.  A district court

may not dismiss an action based on an "assessment that the plaintiff will fail to find evidentiary

support for his allegations or prove his claim to the satisfaction of the factfinder."  *Id*. at 563 n.8.

A complaint, however, may be dismissed if the facts as pled do not state a claim for relief that is

plausible on its face. *See Iqbal*, 129 S. Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss").

## III.  DISCUSSION

### A.      Judicial Notice

The defendants have submitted several public records as attachments to the declaration of their counsel, James Rosenfeld, in support of their Motion to Dismiss.  (See Doc. 13).  These public records include information from both the Alabama and Louisiana Secretary of State's websites regarding Confederate and its predecessor in interest, Confederate Motorcycles, Inc. (Doc. 13-2).  It also includes copies of court documents which indicate that the plaintiff and its predecessor is being or has been sued multiple times in state courts of different jurisdictions, including Louisiana and New York.  (Doc. 13-3).

While Confederate argues that it is inappropriate for this court to take judicial notice of these submitted materials, the Eleventh Circuit Court of Appeals has held that a district court may take judicial notice of public records when evaluating a 12(b)(6) motion to dismiss without converting it into a motion for summary judgment in limited circumstances.  *See Universal Express, Inc. v. United States SEC*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999)); *see also Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (stating in a contract dispute case that "[t]he district court may take judicial notice of public records and may thus consider them on a motion to dismiss").  Specifically, in *Bryant* the court stated:

> .... we hold that a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice (for the purpose of determining what statements the documents contain and not to prove the truth of the

documents' contents)[ ] of relevant public documents required to be filed with the
SEC, and actually filed.  We believe that considering the SEC documents in this
manner in the instant case is permitted by FED. R. EVID. 201[2], is consistent with
the overall aims of the Reform Act, and is not inconsistent with Rule 12(b)(6),
common notions of fairness, or the law of this Circuit.

*Id.*, 187 F.3d at 1278 (footnote omitted).  In *Universal Express*, the plaintiff brought an action

against the S.E.C., alleging that it violated the plaintiff's First and Fifth Amendment rights, as

well as state tort law.  Universal sought damages as well as declaratory and injunctive relief.

Accompanying its motion to dismiss the action, the S.E.C. attached the complaint it initiated in

an enforcement proceeding in another District Court.  On appeal of the granting of the motion to

dismiss, the plaintiff argued that the court improperly considered the attached complaint.  In

response, the Eleventh Circuit Court of Appeals stated:

> A district court may take judicial notice of certain facts without converting
> a motion to dismiss into a motion for summary judgment.  *See Bryant v. Avado
> Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).  Public records are among the
> permissible facts that a district court may consider.  *See Stahl v. U.S. Dep't of
> Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial
> notice of public records and may thus consider them on a motion to dismiss."); *cf.
> Bryant*, 187 F.3d at 1278 (11th Cir. 1999) (holding that "a court, when
> considering a motion to dismiss in a securities fraud case, may take judicial notice
> ... of relevant public documents required to be filed with the SEC").  Because the
> complaint filed in the Southern District of New York is a public document, the
> district court was not obliged to convert the motion to dismiss to one for summary
> judgment or comply with the notice requirements of Rule 56(c).  That the
> complaint in the New York action was filed after Universal filed its complaint
> does not affect its status as a public record.

*Universal Express*, 177 Fed. Appx. at 53-54.

While the court may take judicial notice of the public records submitted by defendants,

---

[2] FED. R. EVID. 201(b) provides that "a judicially noticed fact must be one not subject to
reasonable dispute in that it is ... (2) capable of accurate and ready determination by resort to
sources whose accuracy cannot reasonably be questioned."

this is a discretionary matter. In the present instance, the court will receive the pertinent public

records located in the defendant's attachment. However, the evidence is of limited use in the

present circumstances as will be discussed further below.

B.      **The Plaintiff's Libel Claims**

In order to make out a *prima facie* case of defamation under Alabama law, a plaintiff has

the burden at trial to establish the following elements: "[1] that the defendant was at least

negligent, [2] in publishing [3] a false and defamatory statement to another [4] concerning the

plaintiff, [5] which is either actionable without having to prove special harm (actionable *per se*)

or actionable upon allegations and proof of special harm (actionable *per quod*)." *Delta Health*

*Group, Inc. v. Stafford*, 887 So. 2d 887, 895 (Ala. 2004) (quoting *Nelson v. Lapeyrouse Grain*

*Corp.*, 534 So. 2d 1085, 1091 (Ala. 1988)); *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390

(Ala. Civ. App. 1999) (quoting *Drill Parts & Service Co. v. Joy Mfg Co.*, 619 So. 2d 1280, 1289

(Ala. 1993). An action for defamation can either be for libel or slander. Libel exists if the

defamatory statements were made in print, while slander involves statements that are spoken.

*Blevins*, 768 So. 2d at 390. In an action for libel, if a statement "exposes the plaintiff to public

ridicule or contempt, though it does not embody the accusation of crime, the law presumes

damage to the reputation, and pronounces it actionable *per se*." *Blevins*, 768 So. 2d at 390

(citing *Marion v. Davis*, 217 Ala. 16, 18, 114 So. 357, 359 (Ala. 1927)).

Whether a statement is capable of a defamatory meaning is a question of law. *Blevins*,

768 So. 2d at 390 (citing *Harris v. School Annual Publ'g Co.*, 466 So. 2d 963, 964 (Ala. 1985)).

When examining the allegedly defamatory statements, a court must look to "that meaning which

would be ascribed to the language by a reader or listener of average or ordinary intelligence, or

by a common mind." *Blevins*, 768 So. 2d at 390 *citing Camp v. Yeager*, 601 So. 2d 924, 927

(Ala. 1992) (quoting *Loveless v. Graddick*, 295 Ala. 142, 148, 325 So. 2d 137, 142 (1975)).

Specifically, in the case of a news type article, the court should consider whether an ordinary

reader of average intelligence would find the statements to be defamatory after reading the article

as a whole.[3] *Id*. (citing *Dill Parts and Service Co., Inc. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1289

(Ala. 1993)). If the statements are reasonably capable of a defamatory meaning, then it becomes

a question of fact to be considered by a jury. *Yeager*, 601 So. 2d at 927. However, to be libelous

*per se*, the words must impute dishonesty or corruption or must "directly tend to prejudice [ ]one

in his office, profession, trade or business, or in any lawful employment by which he may gain

his livelihood." *Gray v. WALA-TV*, 384 So. 2d 1062, 1065 (Ala. 1980), *limited on other grounds

in Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085 (Ala. 1988) (citing *Ferdon v Pickens*, 161

Ala. 181, 49 So. 888 (1909) and *Gaither v. The Advertiser Co.*, 102 Ala. 458, 14 So. 788 (1893)).

While it is true that under Rule 8 a plaintiff must only plead short and plain statements

sufficient to put the defendants on notice of the claims brought against them, when challenged in

a 12(b)(6) motion, a plaintiff must plead facts that raise a right to relief above the level of mere

speculation. *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1950. Taking all the well pleaded

facts as true, the court finds that the plaintiff has not met the requisite elements for a libel *per se*

claim in that the defendants are not alleged to have made statements imputing dishonesty or

corruption, nor are the statements the type of comments that "directly tend to prejudice []one in

---

[3] *Joy Mfg. Co.*, a case decided in 1993, specifically notes that this is the test to be used
when analyzing newspaper articles. It is relevant that web articles today are equivalent to a
newspaper article in 1993 in that both are widely available and read by the public. Thus it seems
logical that the same test should be applied to web articles like the one in this case posted on
Jalopnik.com.

his office, profession, trade or business, or in any lawful employment by which he may gain his

livelihood." *Gray*, 384 So. 2d at 1065.

The court further finds that the plaintiff has met its burden as to the claim for libel *per*

*quod*. Confederate alleges that the defamatory statements published by the defendants were false,

and that they were communicated to the general public via Jalopnik.com with the intent to harm

Confederate.  Confederate also claims that, as result of the defendants' actions, the statements

have impugned its ability to conduct business, resulting in special damages due to the loss of

customers, sales, and investor confidence.  It also notes that "the extent and caliber of damages

has yet to be determined."  (Doc. 18 at 4).

To the extent that the defendants claim that the allegedly defamatory statements should be

protected by the First Amendment as mere opinion, commentary, or hyperbole, the court

disagrees in part.  Specifically, the defendants assert that if a statement is not capable of being

proven by "objective evidence," it is protected under the First Amendment.  (Doc. 12 at 11)

(citing *Aviation Charter, Inc. v. Aviation Research Group/U.S.*, 416 F.3d 864, 868 (8th Cir.

2005) (holding that "statements that 'reasonably cannot be interpreted as stating facts are

protected from defamation actions by the First Amendment")).  In conclusory fashion, the

plaintiff responds:

> While it is undisputed that Defendant Siler has exaggerated his claims,
> there is noting in the article which suggests opinion.  Rather, Siler has purposely
> phrased the article to appear as if he investigated CMI and discovered numerous
> disgruntled owners and employees.  Also, he is holding himself as an automotive
> expert and investigative journalist.  He is not opining his personal feelings or
> beliefs regarding the Plaintiff.  He is baldly stating the Plaintiff is unfit to do
> business in the State of New York and he is implying he acquired that information
> from unnamed, multiple sources.  A reader of average intelligence would believe
> the "road-tested" reporter of an automotive enthusiast website would have

specialized knowledge and information to form the basis of his article.

(Doc. 18 at 9).  The plaintiff further states that Siler's statement that "**[i]n fact**, it's surprising to

see them at the New York Auto Show today since last **we heard** the Alabama based company

was being **sued so heavily in state courts by disgruntled owners** that they were **unable to do**

**business here**" is an objective statement and not a "'belief' or an 'opinion.'"  *Id*. (emphasis in

original brief).

The defendants cite numerous cases in support of their contention that the present

statements cannot support a defamation action.  These include *Potomac Valve & Fitting, Inc. v.*

*Crawford Fitting Co.*, 829 F.2d 1280 (4th Cir. 1987); *Elite Funding Corp. v. Mid-Hudson Better*

*Bus. Bureau*, 165 Misc. 2d 497, 500, 629 N.Y.S.2d 611 (N.Y. Supp. 1995); *Aviation Charter,*

*Inc.*, 416 F.3d at 871; *Jefferson County School District No. R-1 v. Moody's Investor's Servs.,*

*Inc.*, 175 F.3d 848 (10th Cir. 1999); *Presidio Enter. v. Warner Bros Distrib. Corp.*, 784 F.2d 674

(5th Cir. 1986).  (Doc. 12 at 12-13).

In *Crawford*, the court affirmed the grant of summary judgment in a defamation claim

stating, in pertinent part, that the statement that "'[t]his was a (purposely) very poor test designed

to snow the customer'-is, when read in proper context, a constitutionally protected expression of

opinion."  829 F.2d at 1285.  In so finding, the court noted that the "line between fact and

opinion is sometimes illusive."  *Id*.

In *Elite Funding*, the court noted that comments that a brokerage firm had an

"unsatisfactory record" were protected comments under the state's "'common interest' qualified

privilege."  165 Misc. 2d at 502.  Referencing the comment as "opinion," the court stated that it

also was protected due to the fact that it was true.  *Id*. at 500-01.

In *Aviation Charter, Inc.*, the publisher of air charter safety rating stated that the plaintiff

had an unfavorable safety record.  416 F.3d at 867-86.  Affirming the grant of summary

judgment, the court stated that the defendant's

> interpretation of the public database information available on Aviation Charter is
> not "sufficiently factual to be susceptible of being proved true or false." *Id.* It is a
> subjective interpretation of multiple objective data points leading to a subjective
> conclusion about aviation safety.  *Cf. Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d
> 1222, 1227 (7th Cir. 1993) ("A statement of fact is not shielded from an action for
> defamation by being prefaced with the words 'in my opinion,' but if it is plain that
> the speaker is expressing a subjective view, an interpretation, a theory, conjecture,
> or surmise, rather than claiming to be in possession of objectively verifiable facts,
> the statement is not actionable.").  Because [defendant] ARGUS's comparative
> rating is not "a provably false statement of fact," *McClure*, 223 F.3d at 853,
> Aviation Charter's defamation claim fails with respect to that rating and the
> derivative statements in the Star Tribune article.

*Id.*, at 871.

Similarly, in *Jefferson County School Dist.*, the court upheld the dismissal of claims

premised on comments such as "negative outlook" and "ongoing financial pressures."  175 F.3d

at 855-56.  The court stated that such phrases, without additional "specific factual assertions," are

insufficient to state a claim because they constitute protected First Amendment expressions of

opinion.  *Id*. at 856.

Finally, in *Presidio Enterprises*, the court, in reversing the lower court's entry of a

judgment on the jury verdict, held, in pertinent part, that statements by a producer to the effect

that the film would be a "blockbuster" and one of the most successful films of the summer

season were expressions of opinion that were not actionable.  784 F.2d at 679-80.  More

specifically, the court stated that the term "blockbuster" was inherently vague.  *Id*. at 680.

Having reviewed each of the authorities cited by the defendants and discussed above, the

court finds they are distinguishable.  First, only the *Jefferson County* case was decided on a

motion to dismiss.  The other cases were decided on summary judgment or following a jury

verdict.  Second, the cases are factually inapposite.  Each involved statements that were clearly

based on subjective assessments or opinions.  In the present case, for purposes of a motion to

dismiss, the court must find that the last statement that the plaintiff "was being sued so heavily in

state courts by disgruntled owners that they were unable to do business here," is more akin to a

statement of fact than an opinion.[4]   It is reasonably capable of a defamatory meaning sufficient

to survive the motion to dismiss.  The court, however, does find that the remainder of the quoted

article contains opinions and subjective assessments that are not actionable.[5]  It is not proper at

this stage for this court to decide whether the plaintiff would win or lose on the merits

concerning the remaining statement concerning the lawsuits and the inability to conduct business

in New York.

     The court similarly rejects the defendants' assertion that the last statement is protected

"imaginative expression" and "rhetorical hyperbole."  (Doc. 12 at 15).  The court recognizes that

the Alabama Supreme Court has stated that "'[i]maginative expression' and 'the rhetorical

---

[4] In reaching this conclusion, the court is construing the statement in the "full context" of the release.  *See Butler v. Town of Argo*, 871 So. 2d 1, 17 (Ala. 2003) (noting that "statement must be construed in connection with the other parts of the conversation, in order to determine the context in which the statement was made" (quoting *Liberty Nat'l Life Ins. Co. v. Daugherty*, 840 So. 2d 152, 157-58 (Ala.2002)); *United States Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1293 (11th Cir. 2001) (stating that "alleged defamatory matter must be construed in connection with other parts of the conversation or publication, and the circumstances of its publication ..." (quoting *Marion v. Davis*, 217 Ala. 16, 114 So. 357, 359 (1927)).

[5] More particularly, the court is referring to the comments about "rolling robotic art," which the article defined as "rolling literally, because according to anecdotal evidence from multiple owners and former employees, Confederate's motorcycles have proven so unreliable that you'll have to push them."  (Doc. 1-2 at 2).

hyperbole' traditionally used in public debate are protected." *Deutch v. Birmingham Post Co.*,

603 So. 2d 910, 912 (Ala. 1992); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.

Ct. 2695, 2706 (1990) (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 108 S. Ct. 876,

879 (1988)).  To the extent that the defendants cite *Finebaum v. Coulter*, 854 So. 2d 1120 (Ala.

2003), in support of their position that the statement is protected expression, the court finds that

case legally and factually distinguishable from the present situation.  The language in the

*Finebaum* case was clearly "rhetorical hyperbole" and not the imparting of factual information.

The defendants also argue that, because the statement regarding prior court actions is

substantially true, the court "should rule as a matter of law that the plaintiff cannot meet its

burden of establishing substantial falsity." (Doc. 12 at 17-20).  In support of this contention, the

defendants further assert that the public records attached to their submission "conclusively

establish the truth of the Post's statement," and "suggest that Confederate Motors, Inc.,

Confederate Motor Company, Inc., and Confederate Motorcycles, Inc. are essentially the same

entity, with essentially the same names, principal[s], business and business address (save for the

company's move from Louisiana to Alabama at one point)...."

The latter point is noted because at least twelve of the prior lawsuits were filed against

Confederate Motorcycles, Inc., rather than Confederate Motors, Inc.  (See Doc. 13-4 and 13-5).

Although the defendants assert that the corporate distinctions between the three entities would be

a meaningless distinction to the reasonable reader (doc. 12 at 20), the court cannot view the

suggested distinction in such a light at this juncture as it would be construing the allegations in a

light most favorable to the defendants.  Additionally, as best this court can discern from its

review of these public records, only two cases (both of which are against Confederate

Motorcycles, Inc., and filed over ten years ago) even appear to address issues involving

"disgruntled owners." (Doc 13-4 at 2 of 14 (*Metevier v. Confederate Motorcycles, Inc.*) & 6 of

14 (*Barta v. Confederate Motorcycles, Inc.*)).  Although the defendants assert that the *Barlow*

case deals with a dispute with a disgruntled owner, the public records before the court (doc. 13-4

at 10 of 14) do not necessarily indicate that.[6]  To so find, the court would have to go beyond the

public records and to the declaration of James Rosenfield, wherein he states that the records,

including the *Barlow* materials, involve claims by disgruntled owners, something the court

declines to do at this juncture.

Lastly, the defendants argue that the plaintiff has failed to plead special damages on the

libel *per quod* claim.  (*Id*. at 20-21).  "Special damages are the material harms that are the

intended result or natural consequence of the slanderous statement, and the general rule is that

they are limited to 'material loss capable of being measured in money.'"  *Butler v. Town of Argo*,

871 So. 2d 1, 18 (Ala. 2003) (quoting *Shook v. St. Bede Sch.*, 74 F. Supp. 2d 1172, 1180 (M.D.

Ala. 1999))(internal citations omitted); *see also Edwards v. Hyundai Motor Mfg. Alabama, LLC*,

603 F. Supp. 2d 1336, 1356 (M.D. Ala. 2009) (stating the plaintiff's slander *per quod* claim must

fail because she does not claim "special damages").  The plaintiff only alleges that it "was

proximately damaged by loss of customers, sales and investor confidence" as a consequence of

the defendants' actions.[7]  (Doc. 1 ¶ 32).  While it is true that the plaintiff has not pled a specific

---

[6] The records indicate that the case is an arbitration matter.  (Doc. 13-4 at 10 of 14 to 14 of 14).

[7] The defendants correctly assert in their brief that "[t]he [c]omplaint does not make factual allegations regarding cancelled sales, a drop in share price, lost customers or any losses that can be measured in money" in the fact portion of the verified complaint.  However, as noted above, the plaintiff does allege such losses in the libel per quod claim.  (Compare Doc. 1 ¶ 11

monetary amount that has been lost due to the alleged loss of customers, sales and investor

confidence, these are damages which arguably are capable of being measured under the rubric of

special damages.  How much, if any, actual damage was suffered is an issue of fact that is not

appropriate for the court to consider under a Rule 12(b)(6) motion beyond that already discussed.

No legal authorities in the defendants' submission demonstrate otherwise.

In sum, the court finds that the motion to dismiss is due to be granted as to the libel *per se*

claim (Count One) and denied as to the libel *pro quod* claim (Count Four).

### C.     The Plaintiff's Other Claims

#### 1.     Gross Negligence

Under Alabama law, "the word 'gross' when used in connection with negligence, implies

nothing more than mere negligence." *Fidelity-Phenix Fire Ins. Co. v. Lawler*, 81 So. 2d 908, 912

(Ala. Ct. App. 1955).  It is true that in order to properly allege negligence, the complaint must

disclose facts which tend to show a duty on the part of a defendant to the allegedly injured party,

and the facts must show a breach of that duty.  *Ramsey v. Sentell Oil Co.*, 195 So. 2d 527, 529

(Ala. 1967).  Further, if a complaint fails to allege facts which establish a duty of care owed by a

defendant to the plaintiff, then the complaint does not state a cause of action for negligence.

*Thompson-Hayward Chemical Co. v. Childress*, 169 So. 2d 305, 312 (Ala. 1964) (citing *Stanton*

*v. Marsh*, 150 So. 2d 363 (Ala. 1963).

In the present case, Confederate has failed to identify in its complaint any duty owed by

---

with ¶ 32).  Additionally, the defendants note that should this case go forward, the defendants
"will establish that Confederate's share price has not dropped at all since the publication."  (Doc.
12 at 21 n.7.  That may be correct, but it is not appropriate for consideration on a motion to
dismiss.

the defendants to it.  Additionally, Confederate fails to address this issue in its responsive brief.

(Doc. l8).  It is not the role of this court to divine a duty when one is not alleged in the complaint

or in the responsive pleading.  Additionally, the court sees nothing in the complaint which

implies that the defendants did, in fact, owe plaintiff a duty of care based upon any particular

relationship.  (See Doc. 1 at ¶¶ 23-26).  Absent such a duty, there can be no breach.  Accordingly,

the negligence claim (Count Three) is due to be dismissed.[8]

### 2.    Tortious Interference with Business Relations

Under Alabama law, the elements of a cause of action for tortious interference with a

business relationship are "(1) the existence of a protectable business relationship; (2) of which

the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant

intentionally interfered; and (5) damage."  *White Sands Group, LLC v. PRS II, LLC*, ___ So. 3d

___, 2009 WL 2841114 (Ala. Sept. 4, 2009).  A business relationship may be protected, even in

the absence of a specific contract between the parties, as long as there is a "reasonable

expectation of commercial relations."  *Id.* at \*7 (citing *Ex parte Alabama Dep't. of Transp.*, 764

So. 2d 1263, 1270 (Ala. 2000)).  Thus, in the absence of a written contract, the issue ultimately

becomes, when does the business relationship become "worthy of protection?"  *Id.* (citing

*Tortious Interference with Business Relationships: The Changing Contours of this Commercial*

*Tort*, 35 Cumb. L. Rev. 317, 331 (2004-2005)).

In its complaint, Confederate alleges that "a business relation and agreement existed

between the plaintiff and its customers and potential customers with the full knowledge of the

---

[8]To the extent that the defendants also assert that the negligence claim cannot be used to avoid First Amendment protections (doc. 12 at 21-22), the court has addressed the same in the previous discussion.

defendant," and that defendants intentionally interfered with this relationship to the detriment of

the plaintiff.  (Complaint ¶ 20-22).  The defendants state that Confederate has failed to carry its

burden of establishing a *prima facie* case because it has not identified any specific business

agreement or relationship which suffered damage.  (Doc. 12 at 30).  In fact, according to the

defendants, Confederate only identifies the relationship as being between unnamed current and

future customers.[9]   (Doc. 12 at 23).  The plaintiff's only response to this challenge is that is that

"[t]he posting of the article was intended to interfere with the business of the [p]laintiff, and the

content of the article additionally damaged the [p]laintiff's reputation."  (Doc. 18 at 10).

On a motion for summary judgment, a court would typically look to the facts to determine

the relationship purportedly interfered with.  However, this is not a motion for summary

judgment, but rather a motion for dismissal for failure to state a claim upon which relief can be

granted.  Generally, except as noted previously, nothing outside of the pleadings should be

considered by the court in determining the merits of the motion.  As previously stated, the

standard for a 12(b)(6) motion under *Twombley* is that the plaintiff must plead facts that raise a

right to relief above the level of mere speculation.  550 U.S. at 555.

As stated by the Alabama Supreme Court in *White Sands Group*:

> In Alabama, "'protection is appropriate against improper interference with reasonable expectancies of commercial relations even when an existing contract is lacking.'" *Ex parte Alabama Dep't of Transp.*, 764 So. 2d at 1270 (citing Restatement (Second) of Torts § 766 cmt. c (1979)).  Indeed, "[i]t is not necessary that the prospective relation be expected to be reduced to a formal, binding contract." Restatement § 766B cmt. c.  "It is the right to do business in a fair setting that is protected." *Utah Foam*, 584 So. 2d at 1353.

---

[9] The defendants also challenge this claim on First Amendment grounds that have previously been addressed.

However, "greater protection is given to the interest in an existing contract than to the interest in acquiring prospective contractual relations." Restatement § 767 cmt. j....

*Id*. at \*7.  To the extent that the plaintiff alleges that the defendants intentionally placed this purportedly false information into the stream of commerce to harm it, particularly through its relationship with its customers, it has alleged the requisite information to overcome the motion to dismiss.  At this juncture, the court is merely stating that the plaintiff's allegations are sufficient to overcome the present motion.  Whether or not the plaintiff will be able to meet its burden on a motion for summary judgment after discovery is complete, is another matter.  *See Twombly*, 550 U.S. at 563 n.8 (noting that a district court may not dismiss an action based on an "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder").  Accordingly, the motion is due to be denied as to this claim.

## IV.   CONCLUSION

Premised on the foregoing, the court finds that the motion to dismiss filed by defendants Siler, Jalopnik, and Gawker is due to be granted in part and denied in part.  The plaintiff's claims of libel *per se* and gross negligence are due to be dismissed.  The claims of libel *per quod* and interference with business relations will be allowed to proceed.  An appropriate order will be entered.

**DONE**, this the 24th day of March, 2010.

_John E. Ott_
_____
**JOHN E. OTT**
United States Magistrate Judge